IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOMETOWN 2006-1 1925 VALLEY VIEW LLC, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 3:13-CV-4440-N |
| PRIME INCOME ASSET MANAGEMENT, *et al.*, | | |
| Defendants. | | |

**ORDER**

This Order addresses Defendants American Realty Investors Inc. ("ARI"), Gene S. Bertcher, Louis J. Corna, Income Opportunity Realty Investors Inc. ("IOT"), Daniel J. Moos, Pillar Income Asset Management Inc. ("Pillar"), Steven A. Shelley, and Transcontinental Realty Investors Inc.'s ("TCI") motion to dismiss [62], and Defendants Prime Income Asset Management Inc. and Prime Income Asset Management LLC's (collectively, "Prime") motion to dismiss [63]. The Court grants in part and denies in part the motions.

**I. THE PARTIES' DISPUTE**

This action arises out of a judgment in favor of Plaintiff Hometown 2006-1 1925 Valley View LLC ("Hometown")[1] for breach of a guaranty agreement (the "Guaranty") against Defendant Prime Income Asset Management LLC ("Guarantor"). *See* Final

---

[1]The term "Hometown" is used to refer both to Plaintiff Hometown 2006-1 1925 Valley View LLC's, as well as that entity's predecessors-in-interest.

Judgment [118], *in Hometown 2006-1 1925 Valley View LLC v. Prime Income Asset Mgmt. LLC*, Civil Action No. 3:11-CV-2633-O (N.D. Tex. filed Oct. 5, 2011). When Hometown was unable to collect on its judgment against Guarantor, it filed this suit against Guarantor and a number of Guarantor's affiliated entities, asserting claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. §§ 24.001–24.013, tortious interference with existing contract, alter ego, and assisting and participating/conspiracy.

Hometown's claims rely on the interrelatedness between Guarantor and the other Defendants. According to Hometown, when Guarantor agreed to provide the Guaranty, Guarantor was receiving income from three specific contracts (the "Advisory Agreements"). The Advisory Agreements were nonassignable by Guarantor, and required Guarantor to provide real estate advisory services to TCI, IOT, and ARL (collectively, the "Publics"). Each of the Publics, Hometown alleges, is closely related to Guarantor. In fact, according to Hometown, Defendants Bertcher, Corna, Moos, and Shelley (collectively, the "Individual Defendants") serve as officers and directors for Guarantor, and are also the principal shareholders of the Publics.

Hometown alleges that in order to avoid Guarantor's liability on the Guaranty, Defendants devised a scheme to strip Guarantor of its income. According to Hometown, Defendants created an entirely new entity called Pillar. Prime's employees, which include Individual Defendants, became employees of Pillar. Hometown alleges that Pillar has the same address as Guarantor, and merely changed its "business niceties," including e-mail

ORDER – PAGE 2

domain names, business cards, corporate letterhead, and signage. The Publics then unilaterally canceled the Advisory Agreement contracts they had with Guarantor, and reentered the same agreements with Pillar. This move thus left Prime generally and Guarantor specifically without any source of income or assets to pay on the Guaranty.

Based on these allegations, Hometown asserts TUFTA claims against all Defendants, claims for tortious interference with existing contract against Pillar, the Publics, Prime, and the Individual Defendants, alter ego claims against Guarantor, Pillar, Publics, Prime, and the Individual Defendants, and assisting and participating/conspiracy claims against all Defendants. Hometown requests a permanent injunction.[2]

## II. THE RULE 12(b)(6) LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not

---

[2]Hometown also requested a temporary injunction, which this Court denied. *See* Order, Jan. 28, 2015 [61].

accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)

accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)

(citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT DISMISSES HOMETOWN'S TUFTA CLAIMS

Defendants assert two distinct arguments in support of dismissal of Hometown's TUFTA claims. Because the Court concludes that the Advisory Agreements did not constitute "assets" as defined by TUFTA, the Court does not reach Defendants' contention that they were not "transferees" under TUFTA.

TUFTA allows a creditor to recover a debtor's assets transferred "with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE ANN. § 24.005(a). Hometown seeks an attachment against the full value of the Advisory Agreements as the assets allegedly transferred. First Am. Compl. ("FAC") ¶ 57 [60]. TUFTA defines "asset" as "property of a debtor." TEX. BUS. & COM. CODE. ANN. § 24.002(2). "Property," in turn, is defined as "anything that may be the subject of ownership." *Id.* § 24.002(10). Defendants contend that the Advisory Agreements were not subject to ownership, and thus do not constitute "assets."

Before reaching the legal authorities in support of Defendants' argument, the Court first clarifies the nature of the Advisory Agreements.[3] As previously mentioned, the Advisory Agreements called for Guarantor to provide real estate advisory services to the Publics. The Advisory Agreements were terminable upon 60 days notice. *See, e.g.*, Def.'s App. 0012 [64]. The Advisory Agreements were not assignable by Guarantor. *See, e.g.*, *id.* at 0029 (discussing assignment rules for Advisory Agreement between Guarantor and TCI). With these contractual provisions in mind, Defendants direct the Court to two Seventh Circuit opinions that purportedly establish freely terminable, nonassignable contracts do not constitute assets.

Defendants first point the Court to *In re Commodity Merchants, Inc.*, 538 F.2d 1260 (7th Cir. 1976). At issue in *Commodity Merchants* was the fraudulent transfer statute under the precursor to the current Bankruptcy Code. *Id.* at 1263.[4] The debtor's bankruptcy trustee brought a fraudulent transfer claim against a former business partner of the debtor. *Id.* When the debtor experienced financial difficulty, the business partner canceled a number of commodities transaction contracts it had held with the debtor. *Id.* at 1261–62. The trustee argued the cancellations constituted fraudulent transfers because they deprived the debtor of

---

[3]The Court may refer to the Advisory Agreements in considering a Rule 12(b)(6) motion because they are referred to in Hometown's complaint, *see, e.g.*, FAC ¶ 1, and are central to Hometown's claim. *See Sullivan*, 600 F.3d at 546.

[4]The considerations inherent in *Commodity Merchant*'s fraudulent transfer analysis are similar to those under TUFTA. *Compare Commodity Merch.* 538 F.2d at 1263 ("The essence of a transfer is the relinquishment of a valuable property right."), *with* TEX. BUS. & COM. CODE ANN. § 24.002 (defining "transfer" as the disposition of anything that may be the subject of ownership).

ORDER – PAGE 6

the contracts' value. *Id.* at 1263. The Seventh Circuit determined the cancellations did not constitute transfers because the debtor had no rights in the contracts. *Id.* This was because the business partner had exercised its contractual rights to cancel. *Id.* Further, the contacts lacked any market value because the business partner had to consent to their assignment. *Id.* at 1264; *accord In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1285 (8th Cir. 1988) (concluding that when co-party to a contract may reject assignment for any reason, the contract possesses no market value). Thus, the court concluded no transfer of property had occurred. *Commodity Merch.* 538 F.2d at 1264.

The Seventh Circuit applied *Commodity Merchants* and reached a similar conclusion in *In re Wey*, 854 F.2d 196 (7th Cir. 1988). In *Wey*, the debtor in a bankruptcy proceeding had agreed to purchase a piece of property and had given a substantial down payment. *Id.* at 197. The purchase contract provided that if the debtor did not then pay the balance of the purchase price by a specified date, he would forfeit the down payment. *Id.* He failed to pay the balance and lost the deposit. *Id.* The debtor's trustee argued this was a fraudulent transfer under the Bankruptcy Code. *Id.* The Seventh Circuit disagreed, reasoning that when the debtor failed to pay the balance of the purchase price, the contract expired, and he lost all his rights in the contract. *Id.* at 199. Thus, no transfer occurred because upon the contract's expiration, the debtor had nothing to transfer. *See id.* ("Possession of expired rights is the equivalent of the possession of no rights. When a termination is pursuant to the terms of a contract, there is no transfer.").

In response to this argument, Hometown cites *State ex rel. Industrial Commission of Arizona v. Wright*, 43 P.3d 203 (Ariz. Ct. App. 2002), which addressed this issue under the Arizona Uniform Fraudulent Transfer Statute, *id.* at 204. There, the defendant and his wife had a prenuptial agreement that provided all earnings would remain separate property. *Id.* After a judgment was issued against him, the defendant revised the agreement with his wife to provide all future earnings would be community property. *Id.* The court found that the defendant's right to future income was "immediate and absolute," and he had thus transferred an asset by giving his wife a stake in those immediate and absolute future earnings. *Id.* at 207. The Court respectfully disagrees with the conclusion reached in *Wright*. Under that reasoning, had the defendant simply quit his job, the creditor would have had a fraudulent transfer claim against the former employer because the defendant had an immediate and absolute right to the future income that he waived by quitting. While consideration of whether access to an income stream is "immediate and absolute" may be of assistance in determining whether the income is an "asset," the Court struggles to see how an income stream is "immediate and absolute" when a party has yet to perform the conduct required to entitle it to that income.

This hypothetical reinforces the Court's belief that the termination of a nonassignable, freely terminable contract does not constitute a transfer. Prime chose to wholly terminate its stream of income rather than subject it to judgment. This was a choice for which the Court finds no recourse under TUFTA. What makes this result appear particularly inequitable here is that Prime's principals simply formed a new entity with no judgment on its ledger to enter

into substantially similar contracts and begin earning income again. This is an injury for which alter ego is the proper theory of recovery.

The Court concludes the Advisory Agreements were not "assets" and thus no transfer occurred. The Advisory Agreements were freely terminable, and the Publics exercised their rights under the contracts to terminate them. The Advisory Agreements were also devoid of any market value because the Publics had to consent to any assignment. Accordingly, the Court dismisses Hometown's TUFTA claims with prejudice. Because there is no underlying TUFTA claim, the Court also dismisses aiding and abetting/conspiracy claims based on TUFTA.

### IV. THE COURT DECLINES TO DISMISS HOMETOWN'S ALTER EGO CLAIMS

Defendants also move to dismiss Hometown's claims for alter ego liability. Defendants argue that Nevada law applies to the alter ego claims, but address both Nevada and Texas alter ego law. Defendants' challenge concerns analogous "fraud" requirements under both states' laws.[5] *Compare Menetti v. Chavers*, 974 S.W.2d 168, 173–74 (Tex. App. – San Antonio 1998, no pet.) (requiring proof of "actual fraud" for contract-based alter ego claim), *with Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987) (requiring a showing that adherence to corporate formalities would "sanction fraud or promote injustice"). Defendants argue Hometown cannot show fraud.

---

[5]The Court need not determine whether Nevada or Texas law applies to this action as the fraud element applies to both.

ORDER – PAGE 9

Defendants rely primarily on the fact that the Publics disclosed "a substantial amount of financial information to the SEC." Mot. & Mem. Supp. Mot. Dismiss 18 [62]. This information included the relationship between Prime and the Publics, the termination of the Publics' previous advisor, the affiliation between the various Defendants, and the fact that the Publics were the only entities with assets. *Id.* Defendants further argue that SEC filings are sufficient to put parties on notice of their contents. *Id.* (citing *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 700 (5th Cir. 2004)). However, *Miller* applies to investors, not business partners. 391 F.3d at 700. Thus, Defendants cite no rule of law establishing that Hometown was on notice of the relationships between the various Defendants.

The Court concludes that whether Hometown knew or should have known of the relationships between the Defendants depends on a number of facts inappropriate for consideration on a motion to dismiss. Defendants cannot carry their burden at this stage of establishing that Hometown was on notice of facts that would preclude a finding of fraud. Moreover, even if Hometown had some awareness of Defendants' interrelationships, they could not have had notice of Pillar's involvement, as Pillar was established after the guaranty agreement was made. Thus, Defendants have failed to establish as a matter of law that Hometown cannot show fraud, and the Court denies their motions to dismiss Hometown's alter ego claims.[6]

---

[6]Defendants assert in their replies that Hometown fails to plead fraud with particularity under Rule 9(b). *See* Reply 9 [71]; Reply 10 [72]. Defendants did not raise pleading sufficiency under Rule 9(b) as a ground for dismissal in their motions to dismiss. Thus, the Court does not consider this argument. *See, e.g.*, *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v.* F.D.I.C., 749 F. Supp. 758, 772 (N.D. Tex. 1990).

## V. THE COURT DISMISSES HOMETOWN'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS IN PART

Hometown asserts claims for tortious interference with contract, alleging Pillar, the Publics, Prime, and the Individual Defendants "stripp[ed] Guarantor of its entire revenue stream, thereby (a) inducing Guarantor to breach the Guaranty; and (b) hindering Guarantor's performance of the Guaranty." FAC ¶ 60. The elements of a claim for tortious interference with contract are (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage and (4) actual damage occurred. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

### A. Prime Inc. Is Entitled to the "Financial Interest" Affirmative Defense

Texas courts recognize an affirmative defense of privilege when an interfering party acts to protect its own legitimate financial interest. *See, e.g.*, *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 115 (Tex. App. – El Paso 1997, pet. denied). Courts may grant Rule 12(b)(6) dismissal based on an affirmative defense where it appears clearly on the face of the pleadings. *See Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668–69 (N.D. Tex. 2007).

A number of courts have held that a parent company has a sufficient financial interest in its subsidiary's acts that it cannot be held liable for tortious interference with contract. *See Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1196–97 (5th Cir. 1985) ("Stock ownership generally constitutes a superior financial interest that will trigger the privilege."); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props. L.C.*, 323 S.W.3d 322, 346–47 (Tex. App. – Beaumont 2010, pet. denied) (collecting cases); *Grizzle v. Tex. Commerce Bank*, 38 S.W.3d 265, 286 (Tex. App. – Dallas 2001), *rev'd in part on other grounds*, 96

S.W.3d 240 (Tex. 2002); *Am. Med. Int'l v. Giurintano*, 821 S.W.2d 331, 336 (Tex. App. – Houston [14th Dist.] 1991, no writ). Although Texas appellate courts are not unanimous, *see Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 168 (Tex. App. – San Antonio 1997, writ denied), and the Texas Supreme Court has not directly addressed the issue, the great weight of Texas authority indicates that by law, a parent company cannot tortiously interfere with its subsidiary's contracts.

Based on the authorities set forth above, the Court finds that Prime Inc.'s privilege defense appears on the face of the complaint. Hometown alleges that Prime Inc. is Guarantor's parent company. FAC ¶¶ 1, 16. Thus, under the weight of Texas law, Prime Inc. cannot be held liable for tortious interference with the Guaranty. Accordingly, the Court dismisses Hometown's tortious interference with contract claim against Prime Inc.

### *B. The Publics' and Individual Defendants' Alleged Interference Was Justified*

In addition to the financial interest privilege, Texas courts also recognize the affirmative defense of justification. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000) ("Justification is an affirmative defense to tortious interference with contract . . . ."). "Generally, justification is established as a matter of law when the acts the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights." *Id.* at 81; *accord Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 77–78 (Tex. App. – Houston [1st Dist.] 2011, no pet.); *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App. – El Paso 1988, writ denied).

On the face of the complaint, it appears evident that any interference the Publics may have had with the Guaranty was justified. Hometown's claim against the Publics is based on their termination of the Advisory Agreements[7] with Guarantor, thereby depriving it of revenue needed to comply with the Guaranty. But the Publics were permitted under the terms of the Advisory Agreements to terminate their business relationships with Guarantor. The Publics' interference with the Guaranty was thus justified under the terms of their own Advisory Agreements.

The justification defense applies equally to the Individual Defendants. "Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Here, despite its arguments to the contrary, Hometown's tortious interference with contract claim is based on the Individual Defendants' decision to have the Publics terminate the Advisory Agreements, thereby stripping Guarantor of assets. This decision was a mere inducement of the Publics to do what they had a right to do under the Advisory Agreements. As such, it is not actionable against Individual Defendants.

---

[7]Hometown argues that Defendants' reliance on the terms of the Advisory Agreements is misplaced because Hometown's interference claim is based on interference with the Guaranty, not the Advisory Agreements. Pl.'s Combined Resp. 22. But the termination of the Advisory Agreements is the alleged conduct that caused Guarantor to breach the Guaranty. While the Court accepts that Hometown's claims are not explicitly based on the termination of the Advisory Agreements, the Advisory Agreements are an inherent part of the claim because it was their termination that purportedly caused Guarantor to breach the guaranty.

Hometown argues that the justification defense is not a blanket shield to engage in tortious conduct. *See* Pl.'s Combined Resp. 23 [67] (citing *Prudential Ins. Co.*, 29 S.W.3d at 81). The Court agrees. Indeed, the *Prudential* court cautioned that "[a] party may not exercise an otherwise legitimate privilege by resort to illegal or tortious means." 29 S.W.3d at 81. "Methods tortious in themselves are of course unjustified and liability is appropriately imposed where the plaintiff's contract rights are invaded by violence, threats and intimidation, defamation, misrepresentation, unfair competition, bribery and the like." *Id.* (quoting KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 129, at 992 (5th ed. 1984)). However, Plaintiffs have not stated claims for any independently tortious conduct by the Publics or the Individual Defendants in connection with their termination of the Advisory Agreements. Their subjective bad faith in terminating the Advisory Agreements is insufficient to render their conduct legally culpable. *See id.* at 80 ("[I]f a trial court finds as a matter of law that the defendant had a legal right to interfere with a contract . . . motive is irrelevant."). The Publics were legally justified in terminating the Advisory Agreements. The Court thus dismisses Hometown's tortious interference claims against the Publics and the Individual Defendants.[8]

### VI. THE COURT DISMISSES HOMETOWN'S DERIVATIVE CLAIMS IN PART

Finally, Hometown brings aiding and abetting/conspiracy claims that are based on the alleged fraudulent transfers and the alleged tortious interference with contracts. *See* FAC ¶¶

---

[8]Defendants do not directly address Hometown's tortious interference with contract claim against Pillar. Accordingly, the Court does not dismiss it here.

78, 80. Because the Court dismissed Hometown's claims for fraudulent transfer, derivative claims based on the alleged fraudulent transfers must too fail. *See, e.g.*, *Tilton v. Marshall*, 925 S.W.2d 672, 680–81 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort . . . ."). However, because Hometown continues to maintain a claim for tortious interference with contract against Pillar, the Court declines to dismiss derivative claims against it based on commission of that tort. The Court dismisses Plaintiffs' aiding and abetting/conspiracy to commit fraudulent transfer claims against all Defendants, and dismisses aiding and abetting/conspiracy to tortiously interfere with contract claims against all Defendants except for Pillar.

## CONCLUSION

The Court grants Defendants' motions to dismiss Hometown's TUFTA claims, its claims for tortious interference with contracts against all Defendants except for Pillar, its aiding and abetting/conspiracy to commit fraudulent transfer claims against all Defendants, and its aiding and abetting/conspiracy to engage in tortious interference with contract claims against all Defendants except for Pillar. Because the dismissed claims would be inherently defective however pled, the Court dismisses them with prejudice. The Court denies Defendants' motion to dismiss Hometown's claims for alter ego liability.

Signed June 24, 2015.

_____
David C. Godbey
United States District Judge